[S. F. No. 11737. In Bank.—November 21, 1928.]

EVELYN ELLIS SMITH, Appellant, v. J. F. CARLSTON, Respondent.

James F. Peck, George M. Naus, John H. McDaniels, W. B. Bunker and C. M. Peck for Appellant.

Fitzgerald, Abbott & Beardsley for Respondent.

RICHARDS, J.—This action was commenced by the plaintiff for the recovery from the defendant of the sum of $300,000, with interest thereon at the rate of seven per cent per annum from the twelfth day of January, 1923, and for her costs of suit. The plaintiff's cause of action is based upon certain written agreements made and entered into between herself and the defendant and which are attached as exhibits to her complaint and are by reference made a part thereof. The first three of these agreements, in the order of their creation, are Exhibit "A," Exhibit "D" and Exhibit "C," the first two of which bear the date of January 12, 1922, and the third of which bears the date of January 17, 1922, but which, according to the averments of the plaintiff's complaint, were all entered into on the latter date. These three exhibits read as follows:

"Exhibit A.

"$88,487.00                 Oakland, Calif., January 12, 1922.

"On or before one year from date, without grace, for value received, I promise to pay to the order of J. F. Carlston, at my office in the city, the sum of eighty-eight thousand four hundred and eighty-seven and no/100 dollars, payable in United States gold coin, with interest in like gold coin, from date until paid at the rate of six (6) per cent per annum, payable June 30th and December 31st; and if not so paid to compound and become a part of the principal, and bear interest thereafter at the same rate.

"EVELYN ELLIS SMITH."

"Exhibit D.

"75,000.00                 Oakland, Calif., January 12, 1922.

"On or before one year after date, without grace, for value received, I promise to pay to the order of J. F. Carlston, at my office in the city, the sum of seventy-five thousand and no/100 dollars, payable in United States gold coin, with interest thereon in like gold coin, from date until paid, at the rate of six (6) per cent per annum, payable June 30 and December 31; and if not so paid to compound and be-

come a part of the principal, and bear interest thereafter at the same rate.

"EVELYN ELLIS SMITH."

"Exhibit C.

"This agreement, made and entered into by and between J. F. Carlston of the City of Oakland, County of Alameda, State of California, party of the first part, and Evelyn Ellis Smith, of the same city, county and state, party of the second part,

"Witnesseth:

"That the said Evelyn Ellis Smith has been requested by the said J. F. Carlston to execute two promissory notes; one in the amount of seventy-five thousand dollars ($75,000), payable on or before one year after date, dated January 12, 1922; one for eighty-eight thousand, four hundred eighty-seven dollars ($88,487), payable on or before one year after date, dated January 12, 1922, as a renewal of three notes heretofore given by Evelyn Ellis Smith to the said J. F. Carlston, as follows:

"One for fifty-five thousand eight hundred and 84/100ths dollars ($55,800.84), payable on demand, dated February 25, 1921; two for fifty thousand dollars ($50,000) each, payable on demand, dated February 25, 1921. Said last three notes are secured, first by a promissory note of the F. M. Smith Securities Company, dated February 28, 1918, for the amount of one hundred thirty-four thousand, five hundred eighty-six and 62/100ths dollars ($134,586.62), which said Securities Company note is itself secured by 1980 shares of stock of the Realty Syndicate; 100 shares preferred stock of Oakland Traction Company; second by 100,000 shares stock of West End Consolidated Mining Company; and

"Whereas, the said J. F. Carlston has requested that the two above notes to be given as a renewal of the said three notes now outstanding, be secured by additional shares of stock, to be divided as follows: Fifty thousand (50,000) shares West End Consolidated Mining Company and fifty thousand (50,000) shares West End Chemical Company stock, which last named one hundred thousand shares of stock are hereinafter referred to as '100,000 additional shares.'

"Now, therefore, it is hereby agreed by and between the parties hereto, that in consideration of said Evelyn Ellis

Smith granting the request of J. F. Carlston, the said J. F. Carlston will, on or before the due date of the said two renewal notes to be executed as above, accomplish a renewal of the said two notes for a further similar period of one year, making the last named expiration date two years from the date hereof; and it is further agreed by the said J. F. Carlston, that in addition to extending the time as hereinbefore stated, he will and hereby does guarantee and agree to release from the pledge so securing said notes and return to said Evelyn Ellis Smith the 100,000 additional shares of stock at such time as the said notes shall be paid by said Evelyn Ellis Smith, or at such time as said notes shall be returned to said J. F. Carlston, and under any circumstances said 100,000 additional shares shall be released and returned to Evelyn Ellis Smith not later than the due date of the said notes executed herewith.

"That said J. F. Carlston further, in consideration of the premises, agrees and guarantees that should the said 100,000 additional shares, or any thereof, be sold under the said pledge thereof by any person whomsoever, that the said J. F. Carlston will account to and pay to the said Evelyn Ellis Smith for such of the said 100,000 additional shares as are so sold or as are not returned to her as herein agreed, at the rate of three dollars ($3.00) per share for each share of said 100,000 additional shares of stock which may be so sold or which may not be returned to her, as aforesaid.

"The said J. F. Carlston further agrees to immediately deliver to said Evelyn Ellis Smith upon the execution of said two notes herewith the above mentioned note of the F. M. Smith Securities Company and the collateral securing it.

"Executed in duplicate.

"In witness whereof, the said parties hereto have hereunto set their hands and seals this 17th day of January, 1922.

"(Signed) J. F. CARLSTON        (Seal).
"(Signed) EVELYN ELLIS SMITH    (Seal)."

In addition to the foregoing exhibits the complaint embodies by reference two other exhibits, namely, Exhibit "B" and Exhibit "E," which have reference to transactions between the plaintiff and defendant occurring on or about December 31, 1922, and which are apparently renewals of the

promissory notes, and in part also of the pledges of stock to which Exhibits "A" and "D" relate. In Exhibit "C," attached to the complaint, there is a recital to the effect that the promissory notes embodied in Exhibits "A" and "D" thereof constituted renewals of three previous promissory notes which had been executed by plaintiff to the defendant, one for $55,800.84, dated February 25, 1921, and two for $50,000 each, dated February 25, 1921, each of which prior promissory notes had been secured by pledges of certain securities, specifically referred to in Exhibit "C." It thus appears that for the period of at least one year prior to the particular agreement embodied in Exhibit "C," and which forms the basis of the plaintiff's alleged right of recovery in the instant case, the relation between the parties hereto had been that of a borrower of certain large sums of money, evidenced by the several promissory notes above set forth or referred to, and the loaner of said several sums of money upon the giving of said notes secured by definite pledges of the stock of certain corporations as defined in the respective pledges thereof, and in which the respective rights and duties of the pledgor and pledgee thereof are specifically set forth. It may also be stated that as to Exhibits "B" and "E," attached to said complaint, it would appear that the foregoing relations between plaintiff and defendant continued to be the relation of each to the other for the period of about one year after the making and entering into of the agreement set forth in Exhibit "C." Upon certain portions of said last-named agreement the plaintiff relies for her recovery in this action. It thus appears that upon January 17, 1922, the plaintiff had executed, or was about to execute and deliver to the defendant, those two certain promissory notes embodied in Exhibits "A" and "D" as renewals of or rather substitutes for three demand notes bearing date February 25, 1921, the principal of which, aggregating $155,800.84, and the overdue interest thereof, amounted to a sufficient sum to equal the aggregate of the two renewal notes, to wit, the sum of $163,487, which the plaintiff was on that date to execute and deliver. The two renewal notes thus presently to be delivered had each attached to it a pledge agreement setting forth the securities deposited in pledge. The promissory note set forth in Exhibit "A" was thus to be secured by a pledge of certificate

79 for 50,000 shares of West End Consolidated Mining Company stock, certificate 225 for 25,000 shares of West End Consolidated Mining Company stock, and certificate 8366 for 25,000 shares of West End Chemical Company stock. The promissory note set forth in Exhibit "D" was to be secured by a pledge of certificate 78 for 50,000 shares of West End Consolidated Mining Company stock, certificate 224 for 25,000 shares of West End Consolidated Mining Company stock, and certificate 8365 for 25,000 shares of West End Chemical Company stock. The foregoing promissory notes, each with its respective securities, had, according to the date borne by each, been executed by the plaintiff on January 12, 1922, but had not been delivered by plaintiff to the defendant until the agreement embodied in Exhibit "C," bearing date of January 17, 1922, had been made between the parties thereto. By the terms of the last-named exhibit, wherein the foregoing facts are quite specifically set forth, it appears that said J. F. Carlston, in requesting the execution of the two renewal notes above referred to and secured as stated in the pledge agreement attached to each, further requested that said renewal notes should be secured by certain "additional shares of stock to be divided as follows: 50,000 shares West End Consolidated Mining Company and 50,000 shares West End Chemical Company stock, which last named one hundred thousand shares of stock are hereinafter referred to as '100,000 additional shares.'" The agreement embodied in Exhibit "C" proceeds to state "that in consideration of said Evelyn Ellis Smith granting the request of J. F. Carlston, the said J. F. Carlston will, on or before the due date of the said two renewal notes to be executed as above, accomplish a renewal of the said two notes for a similar period of one year, making the last named expiration date two years from the date hereof." It would seem quite clear that the two promissory notes embodied in Exhibits "B" and "E," attached to said complaint, were, upon the date named therein, executed and delivered in performance of that portion of said agreement, and that the corporate stock designated in the pledge agreement accompanying each of said notes is specifically the identical shares of stock, pledged as security for the promissory notes embodied in Exhibits "A" and "D," respectively, and of which the promissory notes embodied in Exhibits "B" and "E" were to be a re-

newal. It would thus seem to be fairly inferable that the 50,000 shares of West End Consolidated Mining Company and the 50,000 shares of West End Chemical Company stock, which are referred to in Exhibit ''C'' as ''100,000 additional shares,'' were not, nor either of them, any portion of the stock which had been already designated as securing the two renewal notes referred to in Exhibits ''A'' and ''D,'' but were, as properly stated therein, ''additional shares,'' and which as such were to be the special subject of the particular agreement embraced in Exhibit ''C'' which the plaintiff asserts to have been violated. It may be here suggested, however, that the plaintiff's complaint, including the exhibits appended thereto, creates a degree of uncertainty in the foregoing regard which has rendered said complaint subject to the special demurrer which the defendant aimed at it, and which uncertainty has been accentuated by the briefs and arguments of respective counsel. The importance of this suggestion will be adverted to at a later point in this opinion.

The particular portion of said Exhibit ''C'' which the plaintiff alleges to have been violated reads as follows: ''It is further agreed by the said J. F. Carlston that in addition to extending the time as hereinbefore stated, he will and does hereby guarantee and agree to release from the pledge so securing said notes and return to said Evelyn Ellis Smith the 100,000 additional shares of stock at such time as the said notes shall be paid by said Evelyn Ellis Smith, or at such time as said notes shall be returned to said J. F. Carlston, and under any circumstances said 100,000 additional shares shall be released and returned to Evelyn Ellis Smith not later than the due date of the said notes executed herewith.'' Thus far the agreement in Exhibit ''C'' seems to be fairly reasonable and intelligible, since the defendant thereby seems to agree that because of the granting by Evelyn Ellis Smith of his request for the pledge of the additional 100,000 shares of stock he will, at a date not later than the due date of the two notes which are to be further secured by the additional pledge of these two blocks of stock, release the pledge thereof and will return said additional shares of stock so pledged to Evelyn Ellis Smith, and will not include the same in the renewal of said two notes, which he has already agreed to accom-

plish for an additional period of one year upon the expiration date thereof. Thus far in said agreement, as well as in the other transactions between the parties which preceded the making thereof, these two parties have consistently occupied the relation, respectively, of borrower and loaner of money and pledgor and pledgee of stock, the pledgee agreeing to release to the pledgor within the year fixed by the due date of her two notes the portion of the stock pledged to secure the payment thereof and designated as the 100,000 additional shares of stock." It is at this point to be noted that the said J. F. Carlston, in his capacity of loaner of the sums of money evidenced by the plaintiff's two promissory notes, and as the holder in the capacity of pledgee of the several blocks of stock, including the "100,000 additional shares" pledged for the payment of said indebtedness, was entitled to the rights accorded by law to the owner and holder of such obligations and securities, and hence, and in the exercise of such rights, would be entitled to transfer or hypothecate to others said promissory notes, or either of them, together with the stock pledged to secure the payment thereof, and that he or his transferee thereof would also be entitled to exercise the pledgee's right to sell all or any portion of said pledged stock at the pledgee's sale upon the occurrence of any default on the part of the maker of said notes and of such respective pledges to pay the said notes or any installment of interest which might grow due thereon. It was doubtless in the exercise of the defendant's rights as the pledgee of the "100,000 additional shares" referred to in said agreement that, according to the averment in the plaintiff's complaint, 50,000 shares thereof were sold under said pledge by persons to whom the defendant had transferred one of the notes for the payment of which said shares of stock had been pledged as security; and it was also doubtless due to the possibility of such transfer of said obligations and sale of all or a portion of said "100,000 additional shares" of stock so held in pledge that the succeeding clause in said agreement and the one upon which the plaintiff counts for the specific nature of her right of recovery in this action was inserted in said agreement, and which clause reads as follows: "That said J. F. Carlston further, in consideration of the premises, agrees and guarantees that should the said 100,000 additional shares, or any thereof, be

sold under the said pledge thereof by any person whomsoever, that the said J. F. Carlston will account to and pay to the said Evelyn Ellis Smith for such of the said 100,000 additional shares as are so sold or as are not returned to her as herein agreed, at the rate of three dollars per share for each share of said 100,000 additional shares of stock which may be so sold or which may not be returned to her, as aforesaid.'' It is the contention of the appellant that the foregoing clause in said agreement is to be interpreted as constituting an agreement on the part of the defendant to purchase so much of such ''100,000 additional shares'' of said stock as are not returned to her at the time and in the manner provided in the preceding clause in the agreement, and to pay to the plaintiff as the purchase price thereof at the rate of three dollars per share for such stock as shall not, pursuant thereto, be so returned to her. We are unable to give our concurrence to such a construction of the aforesaid clause in said agreement. ■ When clauses in a written agreement between parties, doubtful in meaning, are to be construed, it is a cardinal rule of interpretation that the entire agreement must be looked to for light in determining the meaning to be given to the particular clause thereof under scrutiny (6 Cal. Jur. 258, sec. 16, and cases cited), and a not less important rule for the guidance of courts in determining the intent of parties in the insertion of particular clauses in their written agreements is that the circumstances and relations of the parties at the time of the execution of their agreements and of the insertion of particular clauses therein shall be carefully considered in aid of such interpretation. (Civ. Code, sec. 1647.) ■ When these two cardinal principles of construction are applied to the instant agreement they would seem to leave little doubt as to how it should be construed. The relation between these two parties throughout the entire course of their dealings, so far as the plaintiff's complaint discloses, was that of a borrower and lender of considerable sums of money, evidenced by several obligations in the form of promissory notes, and of pledgor and pledgee of specific shares of the capital stock of several corporations given in pledge to secure the payment of said several obligations. There is not a word or line in the plaintiff's complaint, other than that stated in her interpretation of the terms of said agree-

ment, to indicate that the defendant ever was or ever intended to become a purchaser or owner of any portion of the several blocks of corporate stock which the plaintiff had pledged to him solely as security for the repayment of the money which he had loaned to her. Nor is there a word or line in said complaint, other than as above stated, that the plaintiff in entering into the relation between herself and the defendant, as evinced by the several written agreements which are attached as exhibits to her complaint, desired or intended to sell or transfer in ownership to the defendant any part or portion of the corporate stock which she had thus pledged to him. The words "purchase" and "sale" are significantly absent from that portion of Exhibit "C" upon which the plaintiff relies as the sole basis for the recovery sought herein; and even if it should result that the defendant should be compelled to pay to the plaintiff the sum of $300,000 for which he sues, it is plain that the defendant upon making such compelled payment could not become the purchaser or owner of at least one-half of the "100,000 additional shares" for which he had thus paid, since it affirmatively appears upon the face of the complaint that 50,000 shares thereof have already been sold and transferred by other persons to whom the defendant had assigned one of the notes for the payment of which said stock was pledged. Taking, thus, into consideration the situation and relation of the parties throughout, we can arrive at but one interpretation of the particular clause in said agreement upon which the plaintiff predicates her cause of action, and that interpretation is that it was the intent of the parties thereby to provide for the payment of liquidated damages in the event that the defendant should for any reason fail or be unable to keep his agreement to release and return to the plaintiff said "100,000 additional shares of stock" at a time not later than the due date of the two promissory notes for the payment of which said specific shares of stock were pledged as additional security. This being our conclusion as to the only meaning which can reasonably be assigned to the aforesaid terms of said agreement, it follows irresistibly that the provisions therein providing for such liquidated damages are void as in violation of sections 1670 and 1671 of the Civil Code. It is not necessary to cite authorities in support of the position that if the particular clause in Exhibit "C" is

to be interpreted as providing for the payment of liquidated damages it falls within the inhibition of section 1670 of the Civil Code, since the plaintiff has neither sought to plead a cause of action for unliquidated damages for the breach of said agreement, nor to set forth any facts or circumstances which would bring her cause of action within the exception to the foregoing section embodied in section 1671 of said code. The appellant is resting her asserted right of recovery of the sum of $300,000 from the defendant solely upon her contention that the foregoing agreement is to be interpreted as having created an alternative contract which must necessarily have amounted to a contract of purchase and sale of so much of said stock as the defendant failed to return to the plaintiff within the allotted time. The authorities which the appellant cites in support of this contention are, in our opinion, inconclusive, since in none of the cases so cited does the pre-existing relation of pledgor and pledgee exist, while in each of the said cases the relation of purchaser and seller of the property in controversy is inferable from the relation of the parties and the language of the agreement in each particular case. The cases of *Haskins* v. *Dern*, 19 Utah, 89 [56 Pac. 953], *Guss* v. *Nelson*, 200 U. S. 298 [50 L. Ed. 489, 26 Sup. Ct. Rep. 260, see, also, Rose's U. S. Notes], and *Stevens* v. *Hertzler*, 109 Ala. 423 [19 South. 839], are illustrative of the difference between the causes and decisions upon which the plaintiff chiefly relies and the facts of the case at bar. The case of *Wilmington Trans. Co.* v. *O'Neil*, 98 Cal. 1 [32 Pac. 705], and the case of *Westcott* v. *Thompson*, 18 N. Y. 363, which in the former case is cited with approval, more nearly fits the instant situation, and are cited in support of our foregoing conclusion.

We have thus far been considering the deficiencies in the plaintiff's complaint from the viewpoint of the general demurrer thereto. We do not deem it necessary to refer in detail to the numerous grounds of special demurrer which the defendant urged against the uncertainties in said complaint. We may, however, in furtherance of the suggestion put forth in an earlier portion of this opinion, advert to the uncertainty existing therein as to whether the additional 100,000 shares of stock, for the nonreturn of which the plaintiff seeks the recovery of the specific sum of $300,000, were or were not included within the desig-

nated shares of stock which are embraced in the pledge agreements which accompany the promissory notes set forth in Exhibits "A" and "D" in said complaint. If said "additional 100,000 shares of stock" have reference to blocks of stock other than those specifically referred to by number and amount in said appended pledges, there might possibly be some basis for the appellant's argument that said additional stock was never intended by the parties to be pledged to the defendant at all, but was merely to be delivered to him for some undisclosed purpose and was to be returned or paid for at the rate per share stated in said agreement. If, on the other hand, said additional shares of stock were to be held identical with the designated shares to the same amount specified in said pledge agreements, there would thus exist a very plausible basis for the defendant's argument that by the renewal of the two notes, accomplished on December 31, 1922, accompanied by a re-pledge of the same identical stock which formed the security of the two obligations which these promissory notes replaced, the parties thereto had abrogated and rendered ineffectual that portion of the agreement embodied in Exhibit "C" upon which the plaintiff relies for a recovery. The attention of the plaintiff was directed to the foregoing uncertainty in her complaint by subdivision (d) of the defendant's special demurrer, and not having seen fit to so amend her complaint as to avoid this ground of special demurrer it follows that the general order of the trial court sustaining said demurrer and the judgment based upon the declination to further amend her complaint should for that reason also be upheld.

The judgment is affirmed.

Waste, C. J., Preston, J., Seawell, J., Curtis, J., Langdon, J., and Shenk, J., concurred.

Rehearing denied.

All the Justices concurred.