[Sac. No. 4633. In Bank.—February 28, 1933.]

CHARLES L. LEMM, etc., Respondent, v. STILLWATER LAND AND CATTLE COMPANY (a Corporation) et al., Appellants.

STILLWATER LAND AND CATTLE COMPANY (a Corporation), Appellant, v. CHARLES L. LEMM et al., Respondents.

Jesse W. Carter for Appellants.

Carr & Kennedy for Respondents.

SHENK, J.—The appeals in these cases are from judgments in favor of Charles L. Lemm, the respondent in each case.

On May 11, 1928, Charles L. Lemm brought an action against Stillwater Land & Cattle Company, hereinafter referred to as the Stillwater Company, and other defendants, to recover possession of a certain hay-press or the value thereof, and damages for its wrongful detention. The hay-press was sold on March 3, 1924, to the Stillwater Company by the McCormick-Saeltzer Company under the terms of a contract of conditional sale for the sum of $809.94. Installments under the contract were payable $300 on February 14, 1925, and the balance on February 14, 1926, with interest. On July 13, 1925, the note and contract were assigned and transferred to Charles L. Lemm. The complaint alleged failure of the defendant to perform the terms

of the contract. By way of answer and affirmative defense the Stillwater Company pleaded an instrument entitled "Stipulation and Agreement", executed on July 7, 1925, which it was alleged constituted a full and complete settlement and release of the contract relied upon and that the obligation evidenced thereby was fully satisfied and discharged.

On August 10, 1928, the Stillwater Company brought an action against Charles L. Lemm and others to cancel a certain note and deed of trust dated December 10, 1921, executed by said company to secure the repayment of the sum of $4,000 loaned to it by Lemm. The basis of that action was the same "Stipulation and Agreement" dated July 7, 1925, pleaded in the answer filed in the action to recover the hay-press. In the complaint in the action to cancel the note and deed of trust it was alleged that the agreement of July 7, 1925, "was intended by said Charles L. Lemm and plaintiff herein, to constitute a full and complete settlement between them, and the obligation which was the subject of said deed of trust . . . was fully paid, satisfied and discharged thereby". By his answer Lemm denied the effect of the instrument as alleged in the complaint and by way of cross-complaint sought a reformation of the instrument to accord with the true intent of the parties, on the ground of mutual mistake. The Stillwater Company demurred generally to the cross-complaint and specially on the ground that the cause of action was barred by the provisions of subdivision 4 of section 338 of the Code of Civil Procedure.

In each action judgment was entered for Charles L. Lemm based on the court's findings that the "Stipulation and Agreement" of July 7, 1925, did not embrace the items involved in these actions. The court also granted the relief sought by the cross-complaint. The Stillwater Company appealed from both judgments.

Both appeals are presented on a single transcript and both are argued in one set of briefs. Several contentions are made as grounds of appeal. The principal contention involves an interpretation of the agreement of July 7, 1925. That agreement was entitled and filed in an action then pending in the Superior Court of Shasta County, brought by The Capital National Bank, The Redding National Bank,

and The First Savings Bank of Shasta County, as plaintiffs, against Stillwater Land and Cattle Company and Charles L. Lemm, as defendants, for the purpose of foreclosing a certain chattel mortgage dated January 6, 1922, securing four promissory notes of the Stillwater Company aggregating a face value of $48,722.91. One of these notes was delivered to each of the plaintiffs in the action and Northern California National Bank. The four notes involved in that action were also secured by a trust deed dated January 6, 1922, and a deed of trust dated February 11, 1922. The note delivered to Northern California National Bank as the payee, together with the right, title and interest of that bank in the chattel mortgage involved in the foreclosure action and in the two deeds of trust last above mentioned, were assigned to Charles L. Lemm.

The agreement of July 7, 1925, recites, "Whereas, the parties to the above entitled action desire to compromise and settle the above entitled action, so far as the same relates to the defendant Stillwater Land and Cattle Company . . . the parties hereto do agree as follows": Provision (1) in substance is that the Stillwater Company will assign to the plaintiffs and Charles L. Lemm all of the personal property covered by the chattel mortgage. The Stillwater Company also agreed to convey to the plaintiffs and Lemm certain real property described in the agreement comprising a tract of 420 acres, none of which was any part of the real property described in the trust deed of December 10, 1921, involved in the cancellation action herein. By paragraph (2) the plaintiff banks and the defendant Lemm agreed to file a dismissal of that action as to the defendant Stillwater Company. Paragraph (3) provided for the execution and recordation of deeds of reconveyance of the real property described in the two deeds of trust referred to in the action and a satisfaction of the chattel mortgage involved therein. The time when possession of the property, both personal and real, should be transferred was provided by paragraph (4). Paragraph (5) related to the assignment of existing insurance policies.

The agreement then reads: "(6) When defendant Stillwater Land and Cattle Company has made the aforesaid conveyances described in paragraph 1 herein, and the same shall have been accepted by the plaintiffs and defendant

Charles L. Lemm, such delivery and acceptance of such conveyances shall be and constitute a settlement in full of all demands and obligations which the plaintiffs herein and defendant Charles L. Lemm have against said Stillwater Land and Cattle Company, and particularly all claims and demands whatsoever arising out of or connected with said deeds of trust and chattel mortgage and obligations connected therewith or secured thereby.'' Paragraph (7) makes provision for payments of costs of suit, etc. Paragraph (8) sets forth that the trial of the action shall be dropped from the calendar and that the plaintiffs in the action and Charles L. Lemm shall forthwith agree upon the amounts due and the respective priorities of the claims of the plaintiffs and Lemm ''under said chattel mortgage and deeds of trust referred to in the above entitled action'', or for an accounting and trial by the court in case of disagreement ''and the court shall determine the respective amounts due each of the plaintiffs and said defendant Charles L. Lemm, and the priorities of such amounts under the terms of said chattel mortgage and said deeds of trust''. The remaining specific agreements are: '' (9) Plaintiffs, and each of them, and Charles L. Lemm, defendant, hereby agree to reconvey to defendant Stillwater Land and Cattle Company any lands which may have heretofore been conveyed to them, or any of them, as security or otherwise, other than the real property described in paragraph 1, which Stillwater Land and Cattle Company is to convey to plaintiffs and defendant Charles L. Lemm . . . (10) Stillwater Land and Cattle Company hereby releases each of the plaintiffs and defendant Charles L. Lemm of and from all obligations, demands and claims whatsoever.'' The agreement was executed by all of the parties to the action in which the agreement was filed.

Pursuant to the terms of the agreement the conveyances provided in paragraph (1) were made, and further negotiations were had among the parties not necessary to mention in detail.

On these appeals the Stillwater Company contends that the provisions of paragraphs (6) and (9) of the agreement of July 7, 1925, are clear and unambiguous; that no assistance outside of their terms is required to interpret them, and that the court erred in admitting over objection evi-

dence of the surrounding circumstances and of the negotiations of the parties upon which to base its findings that the items involved in the actions herein were not embraced within nor settled and discharged by the agreement. In other words, the contention, on that phase of the controversy involving an interpretation of the agreement to support the findings and judgment, is that the effect of admitting evidence of the circumstances surrounding the parties and of the negotiations leading up to the execution of the agreement is to vary the terms of the agreement, which is conceded to be the exclusive memorial of the negotiations of settlement, contrary to the provisions of section 1856, Code of Civil Procedure. The appellant's argument, however, presupposes that the court may not look further than to the language of the paragraphs relied upon by the appellant for an interpretation thereof. The law is to the contrary. A court must look at the contract as a whole and give to each particular clause thereof the modification or limitation or qualification which it is evident from the other parts of the contract the parties intended. (Sec. 1641, Civ. Code; *Ogburn* v. *Travelers Ins. Co.*, 207 Cal. 50, 53 [276 Pac. 1004]; *Stockton Sav. & L. Soc.* v. *Purvis*, 112 Cal. 236, 238 [44 Pac. 561, 53 Am. St. Rep. 210]; 6 R. C. L., p. 834 et seq.) In the interpretation of contracts the duty of the court is to ascertain the intent of the parties. Although the language of the contract must govern its interpretation (Civ. Code, secs. 1638, 1639), nevertheless the meaning is to be obtained from the entire contract and not from any one or more isolated portions thereof. (*Hunt* v. *United Bank & Trust* Co., 210 Cal. 108, 115 [291 Pac. 184]; *Kennedy* v. *Lee*, 147 Cal. 596, 601 [82 Pac. 257]; *Eastman* v. *Piper*, 68 Cal. App. 554 [229 Pac. 1002; 13 C. J., p. 525].) To assist it in the performance of this duty the court may look to the circumstances surrounding the parties at the time they contracted (Civ. Code, sec. 1647; *Ogburn* v. *Travelers Ins. Co.*, supra, at p. 52; *Smith* v. *Carlston*, 205 Cal. 541, 550 [271 Pac. 1091]; *Henika* v. *Lange*, 55 Cal. App. 336, 339 [203 Pac. 798]), including the object, nature and subject matter of the agreement (6 R. C. L., pp. 836, 837; *Eastman* v. *Piper*, supra, at p. 565; *Canal Co.* v. *Hill*, 82 U. S. 94, 100, 101 [21 L. Ed. 64]), and the preliminary negotiations between the parties (6 R. C. L., p. 839), and thus

place itself in the same situation in which the parties found themselves at the time of contracting. (Code Civ. Proc., sec. 1860; 6 R. C. L., p. 849; *Jersey Island Dredging Co.* v. *Whitney*, 149 Cal. 269, 273 [86 Pac. 509, 691]; *Blaeholder* v. *Guthrie*, 17 Cal. App. 297, 300 [119 Pac. 524].) ▮ If the provisions of the contract as a whole are susceptible of an interpretation which will give effect to the mutual lawful intention of the parties as it is thus found to have existed at the time of contracting, the court is bound to give to them that interpretation. (Civ. Code, sec. 1636; *Saunders* v. *Clark*, 29 Cal. 300, 304; *Retsloff* v. *Smith*, 79 Cal. App. 443, 452 [249 Pac. 886]; 13 C. J., pp. 521, 523, sec. 482; 6 R. C. L., pp. 841, 842.) ▮ Whenever it may be determined as a matter of law that the actual mutual intention of the parties may be found within the scope of the language employed by them, the court must interpret the contract so as to give effect to such intention even though the broader and more general terms of the contract may, standing alone, apparently include something as to which it nevertheless appears from the circumstances and from the contract as a whole that the parties did not intend to contract. (Civ. Code, sec. 1648; Code Civ. Proc., sec. 1859; 13 C. J., p. 523.)

▮ In viewing the surrounding circumstances and the situation of the parties the court may also call to its aid the events subsequent to the execution of the contract, particularly the practical construction given to the contract by the parties themselves, as shedding light upon the question of their mutual intention at the time of contracting. (6 R. C. L., p. 853.)

▮ The proper application of these rules of construction and interpretation does not have the effect to vary the terms of a contract nor to make a different contract for the parties. But the purpose of the rules is to make the language used by the parties serve rather than subvert their mutual intention; and they are enacted for the assistance of the court to that end; for if the mutual intent as so ascertained is not readable from the language of the contract viewed by its four corners, the case then becomes one of mistake for the application of section 1640 of the Civil Code. (Wigmore, Evidence, 2d ed., vol. 5, sec. 2430; 6 R. C. L.,

p. 835, sec. 225 et seq.; *United Iron Works* v. *Outer H. etc. Co.*, 168 Cal. 81 [141 Pac. 917]; *Balfour* v. *Fresno C. & I. Co.*, 109 Cal. 221, 225 [41 Pac. 876].)

Furthermore, it may be well to note some authorities which have given support to the statement that "compromises regulate and settle only such matters and differences as appear clearly to be comprehended in them by the intention of the parties and the necessary consequences thereof, and do not extend to matters which the parties never intended to include therein, although existing at the time". (8 Cyc. 520, 521.) Such a statement flows as a corollary from the application of the rules hereinabove referred to; and is applicable in the case of a written memorial whenever at least the matters of difference are clearly comprehended within the terms of the instrument. (See *Carpenter* v. *Markham*, 172 Cal. 112 [155 Pac. 644]; *Jersey Island Dredging Co.* v. *Whitney, supra; Texas & Pac. Ry. Co.* v. *Dashiell*, 198 U. S. 521, 527 [25 Sup. Ct. Rep. 737, 49 L. Ed. 1150]; 22 Cal. Jur., p. 760.)

When the contract of July 7, 1925, is viewed as a whole, it is manifest that the trial court correctly applied the foregoing rules for construing its language when it determined that the parties thereby expressed an intention to settle and discharge only those claims which were involved in the action in which the agreement was filed. And this is so even though another and different intention is also readable therefrom. Whether as a question of fact the parties had the intention to contract with reference only to those matters or things which comprised the subject of the action in which the agreement was filed was a question primarily for the trial court to decide from the evidence of the surrounding circumstances and the negotiations leading up to the embodiment of the agreement into its written form. The court, if it erred at all in this respect, committed error in permitting any of the parties to the negotiations to testify respecting his belief or conclusion as to what was included in the settlement. (*Swain* v. *Grangers Union*, 69 Cal. 186 [10 Pac. 404].) Any such error in the present case is, however, without prejudice, inasmuch as the contract and the competent evidence in the record make it clear that the parties intended to settle only the claims arising out of the four notes involved in

the foreclosure action. The evidence of the subsequent conduct of the parties also supports the trial court's findings that they did not contemplate a settlement of any obligation created in favor of Lemm by virtue of the note and trust deed of December 10, 1921. In this respect it is in evidence that Lemm, with the knowledge of the officers of the Stillwater Company, used that note and trust deed as his own property in raising funds on his own credit subsequent to the time of the execution of the agreement of July 7, 1925. In addition, no reconveyance of the real property so encumbered was ever demanded of Lemm, although reconveyances pursuant to the agreement were delivered to the Stillwater Company. With respect to the note and conditional sales contract covering the hay press, the obligation evidenced thereby was not held by Lemm until after the execution of the agreement of July 7, 1925. The trial court's conclusion that the compromise and settlement did not embrace that obligation is clearly supported.

Furthermore, evidence is admissible to show what claims in fact existed in favor of the promisor at the time the release or discharge was given. (*Swain* v. *Grangers Union, supra,* at p. 188.) What inference is to be drawn from evidence introduced in explanation of any delay in prosecuting such claims is a question for the trial court.

In each case the trial court's finding that a discharge of the obligation involved was not contemplated by the agreement of July 7, 1925, is fully supported by both the law and the evidence. Also, that finding supports the judgment for the respondent in each case. Since the questions determinative of the appeals turn on an interpretation, rather than a reformation, of the agreement of July 7, 1925, the issues raised by the cross-complaint and the demurrer thereto in the cancellation action become immaterial. The pleadings otherwise in both actions sufficiently presented the issues respecting the interpretation of the agreement involved.

The judgments are, and each of them is, affirmed.

Seawell, J., Curtis, J., Preston, J., Thompson, J., Langdon, J., and Waste, C. J., concurred.