**SECURITY INSURANCE COMPANY OF HARTFORD, Plaintiff,**

v.

**TRUSTMARK INSURANCE COMPANY, Defendant.**

**No. CIV.3:01CV2198(PCD).**

United States District Court, D. Connecticut.

Aug. 5, 2003.

spiracy count, as a result of Defendant's same          trial.

Frank F. Coulom, Jr., Marion B. Manzo, Robinson & Cole, Hartford, Mark B. Holton, Kathryn E. Nealon, David J. Grais, James L. Hallowell, Alia L. Smith, Christine Y. Wong, Gibson, Dunn & Crutcher, Kathryn C. Ellsworth, Robert J. Morrow, Erick M. Sandler, Dewey Ballantine, New York, NY, Jeffrey M. Thomen, McCarter & English, LLP, Hartford, for Security Insurance Co. of Hartford, plaintiff.

Jeffrey R. Hellman, Jeffrey M. Sklarz, Zeisler & Zeisler, P.C., Bridgeport, David Spector, Everett J. Cygal, Ronald S. Safer, William E. Meyer, Jr., Amy M. Rubenstein, Michael Mullins, Dennis G. LaGory, Paula J. Morency, Schiff, Hardin & Waite, Chicago, IL, for Trustmark Ins Co, defendant.

### *RULING ON PLAINTIFF'S MOTION TO STAY ARBITRATION*

DORSEY, District Judge.

Plaintiff moves to stay arbitration proceedings between it and third party defendant TIG Insurance Co. ("TIG") pending the outcome of the present litigation. The motion to stay is **granted.**

### I.  BACKGROUND

Familiarity with the prior rulings of this Court is presumed.  TIG and plaintiff en-

tered into a Reinsurance Agreement ("Agreement"), effective January 1, 1999, which contains an arbitration clause providing that

> As a condition to any right of action hereunder, any irreconcilable dispute between the parties to this Agreement shall be submitted to a board of arbitration composed of two arbitrators and an umpire meeting at a place to be agreed by the board.... The majority decision of the board shall be final and binding upon all parties to the proceeding. Judgment may be entered upon the award of the board in any court having jurisdiction.

The Agreement also contains a separate choice of law clause providing that

> This Agreement shall be governed by and construed according to the laws of the state of California, except as to rules regarding credit for reinsurance in which case the rules of all applicable states shall pertain thereto. Notwithstanding the foregoing, in the event of a conflict between any provision of this Agreement and the laws of the domiciliary state of any company intended to be reinsured hereunder, that domiciliary state's laws shall prevail.

On May 3, 2002, defendant filed a third-party complaint against TIG alleging fraud and negligent misrepresentation "based upon the material misrepresentations and omissions made by [TIG] in its attempt to transfer to its unsuspecting reinsurers tens of millions of dollars in losses stemming from its under-performing workers' compensation business." Defendant seeks damages equal to "all net losses [defendant] has paid or is required to pay to [plaintiff] on the TIG business retroceded to [defendant] by [plaintiff]."

By letter dated June 27, 2002, TIG notified that it was invoking the arbitration clause and initiating arbitration. TIG moved to stay proceedings in the present case pending resolution of issues through arbitration, which motion was denied.

## II. DISCUSSION

Plaintiff argues that arbitration should be stayed (1) pursuant to CAL. CIV. PROC. CODE § 1281.2(c)[1] or (2) under the All Writs Act, 28 U.S.C. § 1651.[2] TIG re-

---

1. CAL. CIV. PROC. CODE § 1281.2 provides in relevant part that "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that ... (c) A party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact. For purposes of this section, a pending court action or special proceeding includes an action or proceeding initiated by the party refusing to arbitrate after the petition to compel arbitration has been filed, but on or before the date of the hearing on the petition.... If the court determines that a party to the arbitration is also a party to litigation in a pending court action or special proceeding with a third party as set forth under subdivision (c) herein, the court (1) may refuse to enforce the arbitration agreement and may order intervention or joinder of all parties in a single action or special proceeding; (2) may order intervention or joinder as to all or only certain issues; (3) may order arbitration among the parties who have agreed to arbitration and stay the pending court action or special proceeding pending the outcome of the arbitration proceeding; or (4) may stay arbitration pending the outcome of the court action or special proceeding."

2. As plaintiff's motion is granted based on state law, there is no need to address whether such authority exists under the All Writs Act.

sponds that this Court has no authority to grant a stay of the arbitration proceedings.

Plaintiff argues that this Court may grant a stay pursuant to § 1281.2(c), notwithstanding the absence of such a provision in the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.,* which undisputedly applies to the present agreement absent an exception to its applicability.

This is not the first time a party has sought to stay arbitration proceedings in deference to ongoing litigation. In *Volt Information Sciences v. Board of Trustees,* 489 U.S. 468, 470–72, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989), a California Court of Appeal construed a choice of law clause providing that "[t]he Contract shall be governed by the law of the place where the Project is located" as incorporating the California procedural law and affirmed the trial court decision granting a stay of arbitration pursuant to § 1281.2(c). The California Supreme Court denied discretionary review, and the United States Supreme Court granted certiorari. *Volt Info. Sciences,* 489 U.S. at 472, 109 S.Ct. 1248. In resolving the potential conflict between the FAA and California arbitration law, the Court deferred to the state court interpretation of the choice of law provision. *Id.* at 474, 476, 109 S.Ct. 1248 ("assuming the choice-of-law clause meant what the Court of Appeal found it to mean"), and concluded that

> we do not think the Court of Appeal offended the *Moses H. Cone* principle by interpreting the choice-of-law provision to mean that the parties intended the California rules of arbitration, including the § 1281.2(c) stay provision, to apply to their arbitration agreement. There is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate. In-

terpreting a choice-of-law clause to make applicable state rules governing the conduct of arbitration-rules which are manifestly designed to encourage resort to the arbitral process-simply does not offend the rule of liberal construction set forth in *Moses H. Cone,* nor does it offend any other policy embodied in the FAA.

*Id.* at 476, 109 S.Ct. 1248. The Court further concluded that "Where, as here, the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA, even if the result is that arbitration is stayed where the Act would otherwise permit it to go forward." *Id.* at 479, 109 S.Ct. 1248.

While plaintiff argues that *Volt* resolves the present question and permits the application of the § 1281.2(c) stay provision, TIG argues that *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995), requires otherwise. *Mastrobuono* involved a New York law granting courts the authority to award punitive damages by refusing such authority to arbitrators, and a choice of law clause providing that the agreement "shall be governed by the laws of the State of New York." *Id.* at 53, 115 S.Ct. 1212. The arbitrators awarded compensatory and punitive damages, but a federal district court vacated the punitive damages award concluding that the arbitrators were without authority to issue the award, which decision was affirmed by the court of appeals. *Id.* at 54–55, 115 S.Ct. 1212. Certiorari was granted "because the Courts of Appeals have expressed differing views on whether a contractual choice-of-law provision may preclude an arbitral award of punitive damages that otherwise would be proper." *Id.* at 55, 115 S.Ct. 1212.

In reversing the decision of the Court of Appeals, the Court interpreted the two successive sentences in the agreement providing that the "agreement ... shall be governed by the laws of the State of New York" and "any controversy ... shall be settled by arbitration in accordance with the rules then in effect, of the National Association of Securities Dealers, Inc. or the Boards of Directors of the New York Stock Exchange, Inc. and/or the American Stock Exchange Inc." *Id.* at 58 n. 2, 115 S.Ct. 1212. The Court concluded that "[a]t most, the choice-of-law clause introduces an ambiguity into an arbitration agreement that would otherwise allow punitive damages awards," *id.* at 62, 115 S.Ct. 1212. Using as guidelines the principles that "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration," *id.*, "the common-law rule of contract interpretation that a court should construe ambiguous language against the interest of the party that drafted it," *id.*, and that "a document should be read to give effect to all its provisions and to render them consistent with each other," *id.* at 63, 115 S.Ct. 1212, the Court concluded that the Court of Appeal misinterpreted the agreement and reversed the order vacating the punitive damages award by the arbitrators, *id.* at 64, 115 S.Ct. 1212.

The import of the *Mastrobuono* and *Volt* decisions is a fertile source of debate,[3] with state and federal courts arriving at conclusions far too varied to mention here. In an effort to resolve conflicting interpretations, two circuit courts have adopted a presumption "that a generic choice-of-law clause, standing alone, is insufficient to support a finding that contracting parties intended to opt out of the FAA's default standards." *Roadway Package Sys. v. Kayser*, 257 F.3d 287, 296 (3d Cir.2001); *Sovak v. Chugai Pharm.,* 280 F.3d 1266, 1269 (9th Cir.2002) ("the strong default presumption is that the FAA, not state law, supplies the rules for arbitration"). Although this default rule has the benefit of simplicity, it overlooks the interpretative process inherent in carrying out the fundamental policy of the FAA of ensuring "the enforceability, according to their terms, of private agreements to arbitrate." *Volt Info. Sciences*, 489 U.S. at 476, 109 S.Ct. 1248.

The two Supreme Court decisions further stand for separate propositions. The issue in *Volt* was not contract interpretation, *see Mastrobuono*, 514 U.S. at 60 n. 4, 115 S.Ct. 1212 ("we did not interpret the contract *de novo* ... [but i]nstead ... deferred to the California court's construction of its own State's law"), in concluding that "even if §§ 3 and 4 of the FAA are fully applicable in state-court proceedings, they do not prevent application of CAL. CIV. PROC. CODE ANN. § 1281.2(c) to stay arbitration where, as here, the parties have agreed to arbitrate in accordance with California law," *Volt Info. Sciences*, 489 U.S. at 477, 109 S.Ct. 1248. *Mastrobuono*, in comparison, did not simply ac-

---

**3.** *See, e.g.,* Thomas A. Diamond, *Choice of Law Clauses and Their Preemptive Effect on the Federal Arbitration Act: Reconciling the Supreme Court with Itself,* 39 ARIZ. L. REV. 35 (1997); Heather J. Haase, Note, *In Defense of Parties' Rights to Limit Arbitral Awards Under the Federal Arbitration Act: Mastrobuono v. Shearson Lehman Hutton, Inc.,* 31 WAKE FOREST L. REV. 309 (1996); Joshua M. Barrett, Note, *Federal Arbitration Policy After Mastro-* *buono v. Shearson Lehman Hutton, Inc.,* 32 WILLAMETTEL. REV. 517, 534 (1996). It is noteworthy, given the problems presented by the interaction of arbitration and choice of law clauses, that the Ninth Circuit Court of Appeals has established a "strong default presumption ... that the FAA, not state law, supplies the rules for arbitration." *Sovak v. Chugai Pharmaceutical Co.,* 280 F.3d 1266, 1269 (9th Cir.2002).

cept the interpretation of the lower courts and devoted a substantial portion of its decision to interpretation of the agreement.[4] *See Mastrobuono*, 514 U.S. at 60 n. 4, 115 S.Ct. 1212 ("[i]n the present case, by contrast, we review [*de novo* ] a federal court's interpretation of this contract, and our interpretation ").

█ As *Volt* resolves the question of whether the very state statute at issue here, § 1281.2(c), is preempted by the FAA, all that remains is a question of contract interpretation. In cases involving a choice-of-law provision, "that provision must be honored, and a court interpreting the agreement must follow the law of the jurisdiction selected by the parties." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) (Thomas, J., concurring); *Volt Info. Sciences, Inc.*, 489 U.S. at 474, 109 S.Ct. 1248 ("the interpretation of private contracts is ordinarily a question of state law"). Concerns applicable to interpretation under state law have been defined as follows:

> [S]tate law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally. A state law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with this requirement of § 2. A court may not, then, in assessing the rights of litigants to enforce an arbitration agreement, construe that agreement in a manner different from that in which it otherwise

construes nonarbitration agreements under state law.

*Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 46 (2d Cir.1993).

█ The interaction between an arbitration clause, undisputedly governed by the FAA, and a generic choice-of-law clause, further involves the interaction of state and federal law.

> When required to determine the legal standards governing a particular controversy, courts typically confront two choice-of-law questions. The first is the horizontal question: whether the laws of State X or State Y supply the relevant rule of decision. Choice-of-law doctrines (and, consequently, choice-of-law clauses) speak to this issue. The second choice-of-law question that courts face is the vertical one: whether the rule of decision is supplied by the laws of State X or by federal law.

*Roadway Package Sys.*, 257 F.3d at 293. Although the problem definition is clear, the resolution is not. The court in *Kayser* proceeded to conclude that

> [j]udge-made choice-of-law doctrines (and, accordingly, attempts by contracting parties to influence their application with choice-of-law clauses) have no applicability to answering [the second] question because the relevant rule is supplied by the Constitution itself: a valid federal law preempts any state law purporting to regulate the same issue.

*Id.* at 293–94. The interaction of federal and state law requires determination of the parties' ability to contract around the

---

**4.** *Volt* involved the substantial deference afforded an interpretation of an agreement by the California Court of Appeal, *see Bush v. Gore*, 531 U.S. 98, 114, 121 S.Ct. 525, 148 L.Ed.2d 388 (2000) ("we generally defer to state courts on the interpretation of state law"), whereas *Mastrobuono* involved unre-

stricted review of the interpretation of an agreement by a federal court, *see Salve Regina College v. Russell*, 499 U.S. 225, 231, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991) ("a court of appeals should review *de novo* a district court's determination of state law").

FAA. *See id.* at 294. Although the FAA preempts state arbitration rules, absent the parties' intent to incorporate the same, state law provides the tools by which the intent of the parties is ascertained. If the parties so intend it, the otherwise preempted state arbitration law supersedes the FAA by the parties' choice. The resolution of the question lies in fundamental principles of contract interpretation under, in the present case California, state law.[5]

■ As a court sitting in diversity, in the present case this Court is bound by the decisions of the California Supreme Court, and in the absence of a decision must estimate how that court would construe the present agreement. *See Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967) ("[i]f there be no decision by that court then federal authorities must apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the State"); *Francis v. INA Life Ins. Co.,* 809 F.2d 183, 185 (2d Cir.1987). No similar provision has been interpreted by the California Supreme Court involving an arbitration agreement.[6] As such, the provision will be interpreted pursuant to California law giving due regard to the decisions of its state courts.

■ Under California law, a contract must be interpreted as to give effect to the mutual intent of the parties. CAL. CIV. CODE § 1636. Intent is derived from the language of the agreement, if clear and explicit, *id.* § 1638; *Universal Sales Corp. v. Cal. Press Mfg. Co.,* 20 Cal.2d 751, 128 P.2d 665 (1942), and such intent, when a contract is reduced to writing, should be ascertained from the writing alone when possible, CAL. CIV. CODE § 1639. Ambiguities in contractual terms are resolved through review of "the entire agreement" and guidance sought from "the circumstances and relations of the parties at the time of the execution of their agreements and of the insertion of particular clauses therein." *Smith v. Carlston,* 205 Cal. 541, 271 P. 1091, 1094 (1928).

In *Nedlloyd Lines B.V. v. Superior Court,* 3 Cal.4th 459, 11 Cal.Rptr.2d 330, 834 P.2d 1148, 1154 (1992), the court construed a choice of law clause providing that "[t]his agreement shall be governed by and construed in accordance with Hong Kong law," which is substantially similar to the

---

5. It is significant to note that the present dispute is not one of arbitrability of an issue, *i.e.,* "whether the ... agreement creates a duty for the parties to arbitrate the particular grievance," *AT & T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 647, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), or "whether [there is an agreement] to arbitrate the merits" of the dispute, *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 942, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); *see also Nat'l Union Fire Ins. Co. v. Belco Petroleum Corp.,* 88 F.3d 129, 135 (2d Cir.1996) ("The 'arbitrability' of a dispute comprises the questions of (1) whether there exists a valid agreement to arbitrate at all under the contract in question ... and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement."). This dispute involves the "allocation of power between alternative tribunals." *Mastrobuono,* 514 U.S. at 60, 115 S.Ct. 1212.

6. The choice of law clause at issue in *Volt* was denied discretionary review by the California Supreme Court. *Volt Info. Sciences,* 489 U.S. at 472–73, 109 S.Ct. 1248. As such, the denial may not be read as an endorsement of the opinion of the California Court of Appeals. *See Maryland v. Baltimore Radio Show,* 338 U.S. 912, 917–19, 70 S.Ct. 252, 94 L.Ed. 562 (1950) (noting that "there are ... conflicting and, to the uninformed, even confusing reasons for denying petitions for certiorari"); *Camper v. Workers' Comp. Appeals Bd.,* 3 Cal.4th 679, 12 Cal.Rptr.2d 101, 836 P.2d 888, 894 n. 8 (1992) ("a denial of a petition for review is not an expression of opinion of the Supreme Court on the merits of the case").

present choice of law clause providing that the "[a]greement shall be governed by and construed according to the laws of the state of California." Although the choice of law issue involved therein was the breadth of substantive law encompassed by the choice-of-law, the decision provides guidance on both interpretation of agreements involving sophisticated commercial entities and the import of the very language contained in the present choice-of-law clause.

■ As to agreements between sophisticated entities, the court in *Nedlloyd* points out that

> [Defendant's] view of the problem—which would require extensive litigation of the parties' supposed intentions regarding the choice-of-law clause to the end that the laws of multiple states might be applied to their dispute—is more likely the product of post-dispute litigation strategy, not predispute contractual intent. If commercially sophisticated parties (such as those now before us) truly intend the result advocated by [defendant], they should, in fairness to one another and in the interest of economy in dispute resolution, negotiate and obtain the assent of their fellow parties to explicit contract language specifying what jurisdiction's law applies to what issues.

*Id.* at 1154. The highest court in California therefore concluded that sophisticated commercial parties, as involved in the present case, would necessarily craft the choice-of-law provision to reflect a narrower application of the law of the forum state. Inclusion of the phrase "governed by" was construed as "signifying a rela-

tionship of absolute direction, control, and restraint. Thus, the clause reflects the parties' clear contemplation that 'the agreement' is to be completely and absolutely controlled by" the law of the forum state. *Id.* at 1153–54. As such, the California Supreme Court would conclude, under the same circumstances, that the choice of law clause would incorporate the state rules applicable to arbitration proceedings, regardless of its characterization as a procedural rule. *See Hambrecht & Quist Venture Partners v. Am. Med. Int'l,* 38 Cal.App.4th 1532, 1548, 46 Cal.Rptr.2d 33 (1995) (reading identical language as incorporating both substantive and procedural law of forum).[7]

Of the appellate decisions cited, only *Mount Diablo Medical Center v. Health Net, Inc.* 101 Cal.App.4th 711, 124 Cal. Rptr.2d 607 (2002), bears mentioning. In concluding that the choice-of-law clause incorporated state rules governing arbitration, the court indicated that

> the starting point in the interpretation of the choice-of-law clause, like any contractual provision, is with the language of the contract itself. While [defendant] attempts to group all choice-of-law clauses that make no explicit reference to arbitration under the rubric 'generic,' the term has no precise definition. If by that term is meant a choice-of-law provision that states that the agreement will be governed by the law of a particular state without elaborating the specific provisions of state law to which it applies ..., and if such a 'generic' provision is insufficient to incorporate the state's laws concerning the enforcement of arbitration agreements, requiring

7. *Cronus Investments, Inc. v. Concierge Services, LLC,* 107 Cal.App.4th 1308, 133 Cal. Rptr.2d 384 (2003), cited by plaintiff, is unpublished and by rule without any precedential value. *See* CAL. R. CT. 977(a) (providing that "[a]n opinion of a Court of Appeal ... that is not certified for publication or ordered published shall not be cited or relied on by a court or a party in any other action or proceeding").

such a redundancy before the provision will have any effect leads logically to the conclusion that other provisions ... may also need to contain that redundant choice, e.g., provisions treating indemnification rights or termination events in contracts involving the interstate transportation of products.... We agree with the observation of the concurring judge in *Roadway Package*, who rejected the approach that the FAA controls absent extrinsic evidence of an intent to contract out of the FAA's default regime ... in favor of the traditional attempt to discern the intention of the parties, that [t]he choice of law almost invariably is meant to encompass the entire agreement.

*Mount Diablo Med. Ctr.*, 101 Cal.App.4th at 722, 124 Cal.Rptr.2d 607.

Other than the court's citation to the New York Court of Appeals' decision in *Smith Barney, Harris Upham & Co. v. Luckie*, 85 N.Y.2d 193, 623 N.Y.S.2d 800, 805, 647 N.E.2d 1308 (1995), which was later called into question by the Second Circuit Court of Appeals for its application of New York law, the analysis is sound. *See PaineWebber, Inc. v. Bybyk*, 81 F.3d 1193, 1200 (2d Cir.1996) ("In *Mastrobuono*, the Supreme Court rejected the argument that PaineWebber makes here and the argument that the New York Court of Appeals advanced in *Luckie* .... [A] choice of law provision, without more, cannot impute a specific intent of the parties to exclude punitive damages."). The present conclusion does not, however, rest on the proper application of New York law.[8]

The above conclusion is not inconsistent with *Mastrobuono*. The central issue therein was "whether the arbitrators' award is consistent with the central purpose of the Federal Arbitration Act to ensure that private agreements to arbitrate are enforced according to their terms." *Mastrobuono*, 514 U.S. at 53–54, 115 S.Ct. 1212 (internal quotation marks omitted). As New York law precluded arbitrators from awarding punitive damages, *id.* at 58, 115 S.Ct. 1212, and the agreement to arbitrate provided for an award of punitive damages, *id.* at 64, 115 S.Ct. 1212, the FAA would "withdr[aw] the power of [New York] to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration," *id.* at 56, 115 S.Ct. 1212 (internal quotation marks omitted). Unlike the prohibition placed on the recognition of arbitration awards imposed by New York law in *Mastrobuono*, the "application of CAL. CIV. PROC. CODE ANN. § 1281.2(c) to stay arbitration under this contract in interstate commerce, in accordance with the terms of the arbitration agreement itself, '[will not] undermine the goals and policies of the FAA.'" *Volt Info. Sciences*, 489 U.S. at 470–72, 109 S.Ct. 1248.

This conclusion is further not in conflict with Second Circuit precedent offered as contrary authority. "[T]he standard ... choice-of-law clause in the ... [policy], on its own, is [not] sufficient to incorporate ... [state] law on the allocation of powers between the court and the arbitrator." *Nat'l Union Fire Ins. Co.*, 88 F.3d at 134; *Doctor's Assocs. v. Distajo*, 107 F.3d 126, 131 (2d Cir.1997) ("even the inclusion in the contract of a general choice-of-law

---

**8.** The *Smith Barney* court ultimately held that "when the parties chose to apply New York law, without excluding its arbitration rules from that general condition ... the parties adopted as binding New York's rule that threshold Statute of Limitations questions are for the courts." *Id.* at 202, 623 N.Y.S.2d 800, 647 N.E.2d 1308. This negative implication, *i.e.*, that a party must expressly exclude state arbitration rules from a general choice of law clause, was rejected in *Mastrobuono*.

clause does not require application of state law to arbitrability issues, unless it is clear that the parties intended state arbitration on a particular issue"). Consistent with the foregoing analysis, both cases providing this general statement involved the application of New York law, as did *Mastruono*.[9]

■ As § 1281.2(c) is found to be applicable, TIG argues that plaintiff's failure to raise the issue within the last year constitutes waiver. TIG further argues that the denial of plaintiff's request to stay the proceedings precludes the present motion by virtue of collateral estoppel.[10]

■ On August 21, 2002, TIG's motion to stay the case pending arbitration was denied as it was not apparent that arbitration would provide a more expeditious resolution than would litigation, nor was it apparent that arbitration would address all issues involved herein. At the time the denial issued, it was possible an award would issue prior to February 20, 2003, which might facilitate a resolution to non-arbitrable issues in the third-party complaint. According to TIG, the arbitration proceedings will not conclude until August 2003, after which the panel has sixty days, barring any extensions, to issue an award. As the present case likely will proceed to trial contemporaneously with the arbitration award, there now is a very real possibility that the two judgments, both involving comparable substantive issues, will issue simultaneously, precluding any efforts to introduce one judgment to another proceeding. As such, if defendant establishes fraud on the part of TIG at trial, and TIG prevails in arbitration, plaintiff may find itself in the unenviable position of covering TIG but losing reinsurance for such losses.[11] Given the substance of the denial of TIG's motion to stay one year ago indicating efficient resolution of claims was paramount, and in light of present facts, plaintiff did not waive its right to move to stay arbitration proceedings through its delay.

## III. CONCLUSION

Plaintiff's motion to stay (Doc. No. 247) is **granted.**

SO ORDERED.

---

**9.** There is evidence that TIG insisted that the parties designate California as the applicable law. Although such evidence is admissible to clarify an ambiguity, *see Pacific Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.,* 69 Cal.2d 33, 69 Cal.Rptr. 561, 442 P.2d 641, 644–45 (1968) ("Although extrinsic evidence is not admissible to add to, detract from, or vary the terms of a written contract, these terms must first be determined before it can be decided whether or not extrinsic evidence is being offered for a prohibited purpose."), it is not clear how insistence on California law would bear on interpreting the agreement to include state arbitration rules.

**10.** It is unclear how the panel's decision could collaterally estop a motion to stay arbitration proceedings. As discussed above, the power to stay is discretionary and vested in the court, not the arbitrator. The fact that plaintiff first sought a stay from the arbitration panel has no apparent preclusive effect on its ability to seek the same through authority specifically allocated to the court under California law. As such, and as the matter is procedural rather than substantive, placing the issue outside the normal adjudication accorded preclusive effect, the matter need not be discussed further.

**11.** Contrary to TIG's position, it is neither inconsistent nor unjust to deny its motion to stay based on inherent authority then to grant plaintiff's motion one year later based on facts that have developed over the course of the past year.