John F. LAWRENCE

v.

**WILDER RICHMAN SECURITIES CORP.**

No. 3:04 CV 538(JBA).

United States District Court, D. Connecticut.

March 4, 2005.

Brian P. Daniels, Brenner, Saltzman & Wallman, New Haven, CT, for Plaintiff.

David A. Ball, Richard Slavin, Cohen & Wolf, P.C., Bridgeport, CT, for Defendant.

**Rulings on Plaintiff's Motion for Preliminary Injunction [Doc. # 4]; Defendant's Motion to Dismiss [Doc. # 26]**

ARTERTON, District Judge.

Plaintiff John F. Lawrence ("Lawrence") moves to enjoin defendant Wilder Richman Securities Corp. ("Wilder Richman") from proceeding with the arbitration of Wilder Richman's Statement of Claim against Lawrence before the National Association of Securities Dealers, Inc. during the pendency of this action. Wilder Richman has moved to dismiss plaintiff's complaint. For the reasons that follow, plaintiff's motion is denied, and defendant's motion is granted.

## I. Background

This suit is the fourth in a series of related lawsuits between plaintiff John F. Lawrence ("Lawrence") and certain entities within the Richman Group of Companies, arising out of a dispute over commissions to which Lawrence may be entitled for his solicitation of investors in The Richman Group's investment funds. Lawrence is licensed as a Series 7 General Securities Registered Representative with the National Association of Securities Dealers, Inc. ("NASD"), registered through defendant Wilder Richman Securities Corporation ("Wilder Richman"), which is a member of the NASD. The U–4 Uniform Application for Securities Industry Registration, entered into by Lawrence and listing Wilder Richman as Lawrence's employer, requires arbitration of any dispute. *See* Signature Box of U–4 Form, *The Richman Group, Inc. et al. v. Lawrence*, 3:03cv1940 (JBA) ("1940 Ac-

tion") [Doc. # 8, Ex. A] ("I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the [self-regulatory organization] indicated in item 11 as may be amended from time to time . . . .")

In a suit filed on October 12, 2002, Wilder Richman, along with the Richman Group, Inc. ("TRG, Inc.") and TRG–LLC, sought a declaratory judgment as to the obligations they owed Lawrence. As part of that suit, Wilder Richman moved to compel arbitration based on the terms of the U–4 Application. *See The Richman Group, Inc. et al. v. Lawrence*, 3:03cv1940 (JBA) ("1940 Action"). Lawrence separately filed suit against The Richman Group of Connecticut, LLC on December 18, 2002, and commenced a second suit against other Richman Group entities on January 30, 2004, which was later consolidated with his first suit. *See Lawrence v. Richman Group of Connecticut LLC*, 3:03cv850 (JBA); *Lawrence v. The Richman Group Capital Corporation et al.*, 3:04cv166 (JBA) (collectively, "Consolidated Lawrence Action"). Throughout, Lawrence has not made any claim directly against Wilder Richman.

Lawrence opposed the motion to compel arbitration in the 1940 Action, conceding that he was an "associated person" of Wilder Richman and would be required to arbitrate any claims against Wilder Richman, but maintaining that he had no claim against Wilder Richman. Based on this representation, this Court denied the motion to compel arbitration, reasoning:

> Mr. Lawrence, who is the person claiming to have been wronged, insists that his dispute is with the Richman Group of Connecticut only, and that is his choice on who to bring a claim against or not bring a claim against. . . . The only person . . . against whom Mr. Lawrence has asserted any type of claim for relief is not, by undisputed account, a member or associated person [of the NASD], and the NASD rules simply do not permit, therefore, any of the entities who are members or associated persons, namely Wilder Richman and the Richman Group Inc. to compel arbitration of Mr. Lawrence's claims against a nonmember, not associated person.

Transcript of Bench Ruling on Motion to Compel Arbitration, July 14, 2003 [Doc. # 104, Ex. B] at 26.

This Court noted that Lawrence's choice of whom to sue could have repercussions, however, "in that the entity he has chosen to sue may have few assets, or it may be in the nature of an affirmative defense the fact that his securities could only by law be sold through Wilder, and that may hinder Mr. Lawrence's chances of recovery by his insistence that he only has a dispute against the Richman Group of Connecticut." *Id.* Subsequent to the issuance of the decision denying their motion to compel, plaintiffs in the 1940 action voluntarily dismissed their suit.

Subsequent to this Court's denial of their motion to compel arbitration in the 1940 Action, on September 23, 2003, Wilder Richman sent Lawrence a check in the amount of $498,678. Lawrence, through his counsel, attempted to confirm (1) that this check was not intended to be a payment in full of all sums owed to Lawrence, and (2) that Lawrence's acceptance of the check would not constitute an admission by him that Wilder Richman was in fact the entity liable to Lawrence, or as to the manner in which Wilder Richman calculated the amount. By letter dated October 29, 2003, Wilder Richman's counsel stated, "I cannot add anything material to the letter that accompanied the check sent to your client by [Wilder Richman]. As I

understand it, your client is free to negotiate that check based on, of course, any advice you may wish to give to him." Unsatisfied with the lack of clarification in this response, Lawrence destroyed the check and returned it to Wilder Richman's counsel. On December 29, 2003, Wilder Richman again sent Lawrence a check for $498,678 along with a letter informing him that "the payment is not some kind of trap and we did not place any conditions on your acceptance of it in our letter of September 23, 2003, nor do we now." Lawrence negotiated this check, and negotiated a second check for $156,516 that Wilder Richman sent him on January 30, 2004.

On March 19, 2004, Wilder Richman filed a Statement of Claim against Lawrence with the NASD seeking a determination as to whether Lawrence is entitled to retain any portion of the amounts that WRSC paid him with the December 2003 and January 2004 checks, and a determination that Wilder Richman has no further obligations to Lawrence.

## II. Preliminary Injunction Standard

■ In order to prevail on a motion for preliminary injunction, the plaintiff must demonstrate that he is "likely to suffer irreparable harm in the absence of the requested relief," and either "(a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits to make them fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Sal Tinnerello & Sons, Inc. v. Town of Stonington,* 141 F.3d 46, 52 (2d Cir.1998) (citations omitted).

■ When applying this standard, a showing of probable irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." *Bell & Howell: Mamiya Co. v. Masel Co. Corp.,* 719 F.2d 42, 45 (2d Cir.1983); *see*

*also Reuters Ltd. v. United Press Int'l, Inc.,* 903 F.2d 904, 907 (2d Cir.1990) (party seeking injunctive relief must demonstrate irreparable harm "before other requirements for the issuance of an injunction will be considered"). To establish irreparable harm, plaintiffs must demonstrate an injury that is neither remote nor speculative, but actual and imminent. *Tucker Anthony Realty Corp. v. Schlesinger,* 888 F.2d 969, 974–975 (2d Cir.1989).

## III. Discussion

In his motion, Lawrence seeks an order preliminarily enjoining Wilder Richman from arbitrating its statement of claim against Lawrence. On the merits, he argues (1) that this Court already decided the issue of whether WRSC has the right to compel Lawrence to arbitrate, and Lawrence's negotiation of the December 2003 and January 2004 checks did not materially change the circumstances underlying the dispute between the parties; (2) that Lawrence never contractually agreed to arbitrate the subject matter of Wilder Richman's Statement of Claim; and (3) that Wilder Richman is equitably estopped from demanding arbitration, because it wrongfully induced Lawrence to negotiate the December 2003 and January 2004 checks. Lawrence claims that he will be irreparably harmed if required to submit to arbitration because then he would be forced either to admit that Wilder Richman is liable to Lawrence, jeopardizing his claims in the Consolidated Lawrence Action; or to deny that Wilder Richman is liable to Lawrence, "all at the risk that an NASD arbitration award then will be rendered in [Wilder Richman's] favor, that the Richman Group defendants in the [First and Second Lawrence Actions] subsequently will maintain that only [Wilder Richman] is liable to Lawrence, and that such civil action defendants will obtain a

judgment in their favor on that ground." Plaintiff's Memorandum of Law in Support of Motion for Preliminary Injunction [Doc. # 5] at 15–16. In addition, Lawrence contends that he will suffer irreparable harm because, by submitting to arbitration, he will be deprived of his right to a jury trial and his right to conduct full discovery.

## A. Irreparable Harm

■ Lawrence has failed to demonstrate irreparable harm. The harm Lawrence identifies is no more than the consequence of his own choice. Lawrence has consistently represented in each of the four actions described above that he is aware of no claim that he has against Wilder Richman. It was on this representation that the Court denied Wilder Richman's October 2002 motion to compel arbitration. Lawrence notes that the majority of the compensation he received from 1998 to 2001 came directly from the respective Richman Funds, not Wilder Richman, and that these funds also issued Lawrence Tax Form 1099s. While this is a reasonable basis for his belief that Wilder Richman is not liable to him, defendants also have been consistent in their position that Wilder Richman is the one entity of all the Richman entities that would have any responsibility to pay Lawrence the commissions to which he claims an entitlement. Wilder Richman has argued that to have a valid contract, Lawrence would need to have been acting in his capacity as an associated person of Wilder Richman in undertaking the transactions for which he seeks compensation, because Wilder Richman was the only Richman entity registered with the NASD.

Lawrence is free to make a claim against Wilder Richman, or not, but being forced to choose and live with the repercussions cannot be characterized as irreparable harm. Lawrence's position—that he

first proceed with his suit against the other Richman entities in this Court, and arbitrate before the NASD only if "after full discovery and a trial on the merits, the jury concludes that [Wilder Richman] is the only Richman Group entity which could be liable to Lawrence," Plaintiff's Reply at 4—is untenable for the following reasons. First, whether Wilder Richman is liable to Lawrence is not the subject of any pending action. In this action, Lawrence seeks a declaratory judgment that Wilder Richman's Statement of Claim against him is not arbitrable, and an injunction staying or enjoining Wilder Richman from proceeding with the arbitration of its Statement of Claim. Wilder Richman has not been named as a defendant in the Consolidated Lawrence Action, and Lawrence has disclaimed Wilder Richman's liability under the contract he claims was breached in that action. Lawrence thus has faced the same choice of whom to sue in federal court as he would in arbitration. That choice remains his alone, not one for a jury or the Court.

■ Moreover, as a general matter, the Second Circuit has squarely rejected the argument that the mandatory arbitration clause in Form U–4 unconstitutionally requires a plaintiff to forfeit his Fifth Amendment due process right, Seventh Amendment right to a jury trial, or his right to an Article III judicial forum, because there is "no state action in the application or enforcement of the arbitration clause of Form U–4." *Desiderio v. National Ass'n of Sec. Dealers*, 191 F.3d 198, 207 (2d Cir.1999).

Finally, the Federal Arbitration Act, which governs the NASD arbitration at issue here, requires arbitration "even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S.

213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985)("By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."). This case is thus entirely distinguishable from *Security Insurance Co. of Hartford v. Trustmark Insurance Co.*, 283 F.Supp.2d 602 (D.Conn.2003), on which Lawrence relies, because the district court's decision there to stay arbitration pending the outcome of the litigation was based on the express authorization for such stays in the California Civil Procedure Code.

Because Lawrence has not established irreparable harm, his motion for a preliminary injunction must be denied. *See Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir.1990).

## B. Merits

■ Wilder Richman has moved to dismiss Lawrence's complaint, and incorporates by reference its arguments on the merits of Lawrence's motion for a preliminary injunction. Lawrence's complaint seeks a declaratory judgment that the Wilder Richman Statement of Claim is not arbitrable, and a preliminary and permanent injunction enjoining Wilder Richman from proceeding with the arbitration of its Statement of Claim. Because it is possible to address defendant's motion based only on the allegations in Lawrence's complaint, the extrinsic documents that are incorporated by reference in his complaint, and other items of which judicial notice may be taken,[1] Lawrence's claims may be resolved at this stage.

## 1. Res Judicata

On July 14, 2003 this Court heard argument in a related case on Wilder Richman's motion to compel arbitration based on the terms of the U-4 Application, and denied the motion based on Lawrence's representation that he had no claim against Wilder Richman, the only Richman entity registered with the NASD. *See The Richman Group, Inc. et al. v. Lawrence*, 3:03cv1940 (JBA) ("1940 Action"). Lawrence argues that this prior ruling precludes Wilder Richman's arbitration of its March 19, 2004 Statement of Claim against Lawrence.

Wilder Richman's March 2004 Statement of Claim seeks a determination of its obligations to Lawrence, and relies on two payments totaling $655,194 it made to Lawrence in December 2003 and January 2004, following this Court's ruling and Lawrence's termination of his registration with Wilder Richman ("Post–Termination Payments"). In particular, Wilder Richman seeks a declaratory judgment "(i) establishing the proper amount of the Post–Termination Payments to which Lawrence was entitled, (ii) confirming that Wilder

---

**1.** "In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Discount Bank of New York*, 199 F.3d 99, 107 (2d Cir.1999) (citation and internal quotation marks omitted). Judicial notice is permitted of a fact "not subject to reasonable dispute in that it is . . . capable of accurate and ready determina-

tion by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b). The Court may thus take judicial notice of "prior pleadings, orders, judgments, and other items appearing in the Court's records of prior litigation that is closely related to the case sub judice," particularly where the facts were not disputed in the prior litigation. *Hackett v. Storey*, No. 3:03CV395 (JBA), 2003 WL 23100328, *2 (D.Conn. Dec. 30, 2003) (citations omitted).

Richman has no further obligations to Lawrence for commissions or other compensation relating to Lawrence's services as agent of Wilder Richman, or otherwise, and (iii) ordering Lawrence to remit to Wilder Richman the portion of the Post–Termination Payments to which he was not entitled." Statement of Claim [Doc. # 5, Ex. A] at ¶ 16. If the Panel determines that Lawrence was not entitled to any of the Post–Termination Payments, Wilder Richman also seeks an Award "(i) confirming that Wilder Richman has no further obligations to Lawrence for commissions or other compensation relating to Lawrence's services as agent of Wilder Richman, or otherwise, and (ii) ordering Lawrence to remit to Wilder Richman the portion of the Post–Termination Payments to which he was not entitled." *Id.* at ¶ 17. At oral argument on February 22, 2005, defense counsel represented that Wilder Richman would no longer seek the return of the payments it has already made to Lawrence, and that Wilder Richman would seek to modify its Statement of Claim to reflect this position.

■ This Court's prior denial of Wilder Richman's motion to compel arbitration did not decide the arbitrability of its current dispute with Lawrence. The prior ruling was based on Lawrence's representation that he had no claim against Wilder Richman, and therefore construed Wilder Richman's motion as an attempt to compel arbitration of Lawrence's dispute with a nonmember of the NASD. *See* Transcript of Oral Argument on Motion to Compel Arbitration, July 14, 2003 [Doc. # 12, Ex. B] at 26. Lawrence has now modified his position, and no longer categorically states that he has no claim against Wilder Richman. Wilder Richman's March 2004 Statement of Claim seeks a judgment discharging it from any further obligations owed to Lawrence in light of its payments

to Lawrence totaling $655,194, which were made and accepted after this Court's decision. Thus, in contrast to the positions of the parties at the time of this Court's earlier ruling, the existence and amount of Wilder Richman's further liability to Lawrence are now clearly in dispute. The Court's earlier ruling did not decide the arbitrability of the current dispute between the parties, as set forth in Wilder Richman's March 2004 Statement of Claim.

### 2. Arbitrability of March 2004 Statement of Claim

Lawrence's Form U–4 Application for Securities Industry Registration, submitted to this Court in the 1940 Action, provides:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the [self-regulatory organization] indicated in item 11 as may be amended from time to time . . . .

Signature Box of U–4 Form, *The Richman Group, Inc. et al. v. Lawrence*, 3:03cv1940 (JBA) ("1940 Action") [Doc. # 8, Ex. A]. This arbitration agreement therefore wholly incorporates the rules of the NASD (the self regulatory organization checked in Lawrence's application)—Lawrence has agreed to arbitrate any dispute required to be arbitrated by the NASD's rules.

The NASD's rules contain two relevant provisions: Rule 10101 ("Matters Eligible for Submission") and Rule 10201 ("Required Submission"). As their titles indicate, the first rule (the broadest of the two) describes which matters *may* be arbitrated, while the second rule (which is narrower) describes which matters *must* be arbitrated. Rule 10101 provides in pertinent part:

This Code of Arbitration Procedure is prescribed and adopted ... for the arbitration of any dispute, claim, or controversy arising out of or in connection with the business of any member of the Association, or arising out of the employment or termination of employment of associated person(s) with any member ... (a) between or among members; (b) between or among members and associated persons; (c) between or among members or associated persons and public customers, or others ....

Rule 10201(a) provides in pertinent part:

[A] dispute, claim, or controversy eligible for submission under [Rule 10101] between or among members and/or associated persons, and/or certain others, arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), or arising out of the employment or termination of employment of such associated person(s) with such member, shall be arbitrated under this Code, at the instance of: (1) a member against another member; (2) a member against a person associated with a member or a person associated with a member against a member; and (3) a person associated with a member against a person associated with a member.

The Second Circuit has explained the interplay of these two rules:

Thus Rule 10101 describes the scope of permissive arbitration as any dispute "arising in connection with the business" of members or arising "in connection with the activities of such associated person(s)," *McMahan Sec. Co. L.P. v. Forum Capital Mkts. L.P.*, 35 F.3d 82, 86 (2d Cir.1994), while Rule 10201 limits the scope of mandatory arbitration to disputes that are initiated by specified classes of persons (a "member" or "a person associated with a member") against specified classes of persons, and that are "between or among members and/or associated persons, and/or certain others." *Id.* Accordingly, unless [the party attempting to force arbitration] can avail itself of Rule 10201, it has no power to force the present action to arbitration, regardless of whether the substantive dispute is eligible for submission pursuant to Rule 10101.

*Burns v. New York Life Ins. Co.*, 202 F.3d 616, 619 (2d Cir.2000).

In the 1940 Action, Lawrence conceded that he is an "associated person"[2], and that Wilder Richman is a "member" of the NASD. Lawrence, moreover, continues to acknowledge that if he ever determines that he has a dispute with Wilder Richman, that dispute will be subject to mandatory arbitration at Wilder Richman's behest. While Lawrence agrees that his Form U–4 requires him to arbitrate an actual "dispute, claim, or controversy" with Wilder Richman, he maintains that Wilder Richman's March 2004 Statement of Claim does not set forth such an actual "dispute, claim, or controversy." In particular, he challenges the adequacy of the Statement of Claim because it seeks only declaratory judgment and restitution, and he restates his position, set forth more fully in the Consolidated Richman Action, that he does not at this time believe Wilder Richman is the entity responsible for paying the com-

**2.** The term "person associated with a member" or "associated person of a member" when used with respect to a member of a national securities exchange or registered securities association is defined by statute as "any partner, officer, director, or branch manager of such member (or any person occupying a similar status or performing similar functions), any person directly or indirectly controlling, controlled by, or under common control with such member, or any employee of such member." 15 U.S.C. § 78c(21).

pensation he is due, and that therefore there is no "live" controversy.

Lawrence has not identified, and this Court has not found, any authority supporting his contention that a request for declaratory judgment and claim for restitution are not arbitrable. The NASD Rules themselves call in broad terms for "any dispute, claim, or controversy" to be arbitrated. The seminal construction of what constitutes a "controversy," developed in the Article III constitutional context, is as follows:

> A justiciable controversy is ... distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 240–41, 57 S.Ct. 461, 81 L.Ed. 617 (1937).

■ Using this framework as a guide, Wilder Richman's Statement of Claim sets forth an actual controversy: Wilder Richman has paid Lawrence a total of $655,194 subsequent to his termination of his NASD registration with Wilder Richman, and seeks a determination that it has no further obligation to Lawrence. The controversy is thus concrete, the parties' interests are adverse, and the declaratory judgment sought would finalize the dispute over the nature and scope of Wilder Richman's obligation to Lawrence. This claim

differs markedly from the one previously considered by this Court in Wilder Richman's Motion to Compel Arbitration in the 1940 Action, because Lawrence has now accepted payment from Wilder Richman and no longer disclaims any possibility that Wilder Richman bears responsibility for paying him his commissions—in fact, it is the prospect that he may have to so represent in the arbitration proceeding that formed the basis of his claim of irreparable harm. While Lawrence has set forth the reasons why he believes that other Richman entities, not Wilder Richman, are responsible for his commissions,[3] his very purpose in bringing this action to enjoin the arbitration proceeding is to *avoid* the consequences of choosing not to make a claim against Wilder Richman.

Because there is nothing inherent in the NASD's provision that "any dispute, claim, or controversy" between a member and an associated person be subjected to arbitration that would exclude declaratory judgment actions like Wilder Richman's, Lawrence's claim of lack of arbitrability lacks merit.

### 3. Equitable Estoppel

Lawrence's core contention is that Wilder Richman improperly induced him to accept two checks totaling $655,194 in an effort to "trap" him into submitting to arbitration, and that Wilder Richman therefore should be equitably estopped from bringing its Statement of Claim. Lawrence points to his counsel's correspondence with Wilder Richman's counsel prior to his negotiation of the checks. On September 25, 2003, Lawrence's counsel in a letter sought to "expressly confirm[ ]"

---

**3.** Lawrence agrees that the merits of his claim that other Richman entities and not Wilder Richman are liable to him are not relevant to his claim in this suit. *See* Plaintiff's Memo-

randum in Further Support of Motion for Preliminary Injunction [Doc. # 29, Ex. A] at 2.

the following issues prior to Lawrence's negotiation of the check:

First, the payment is not intended to be a payment in full of all sums due Mr. Lawrence as claimed in the above-captioned action [the '850 Action] or an accord and satisfaction in any regard other than a simple reduction of Mr. Lawrence's total principal damages claim by the amount of the payment. On this point, I note that the September 23, 2003 letter specifically states that a resolution of 'all of the outstanding issues ... is not going to be realized.'

Second, Mr. Lawrence's acceptance of the payment will not constitute an admission or other agreement by him that the 'framework' set forth by WRSC as to how the amount was calculated is accurate. If, on the other hand, the payment was intended to represent full satisfaction of certain compensation due Mr. Lawrence as to certain fund investments, then I would be willing to discuss with Mr. Lawrence which, if any, of the distinct compensation components Mr. Lawrence would be willing to accept as full payment for the compensation due him for specific fund investments. In any event, I reiterate my position that, to the extent your clients admit that a certain minimum sum is due Mr. Lawrence, then that amount must be paid Mr. Lawrence at this time without conditioning same on the compromise by Mr. Lawrence of any of his other claims.

Third, Mr. Lawrence's acceptance of the payment will not constitute an admission or other agreement by him that WRSC is, in fact, the entity so liable to Mr. Lawrence. Instead, Mr. Lawrence would accept the payment on the understanding that the issue of the proper defendant in the above-captioned action remains in dispute and that the payment, although purportedly issued by the WRSC, is being made on behalf of the Richman Group of Companies as a whole in order to satisfy certain of the obligation of whichever Richman Group company ultimately is found to be liable to Mr. Lawrence. To this end, I do not think it is proper for your clients to create a self-serving paper trail, especially where Mr. Lawrence has never before received a check from WRSC; instead, I suggest your clients delivering funds into your law firm account and your firm subsequently issuing a check to Mr. Lawrence. Of course, Mr. Lawrence also will accept a check issued by The Richman Group of Connecticut, LLC.

Letter from Brian P. Daniels to Richard Slavin, David Ball, September 25, 2003 [Doc. # 5, Ex. B].

Lawrence was unsatisfied with Wilder Richman's initial response to his September 25, 2003 letter, and destroyed the check that Wilder Richman sent to him. Subsequently, on December 29, 2003 Wilder Richman again sent him a "new check as a replacement," and responded to Lawrence's stated concerns as follows:

For your information, well before our previous check in this same amount was sent to you (which was never cashed), we were advised by our securities professionals that the appropriate way to pay all commissions was through Wilder Richman Securities Corporation and not directly from each investment fund or for that matter from any other entity. To our knowledge, on all but one occasion, you previously had been paid by the investment funds directly. However, since obtaining this advice, we have been paying all commissions to brokers through Wilder Richman Securities Corporation and your payment is no exception, nor should it be. Or to put it more clearly, all brokers, no matter what the

investment fund, are being paid from Wilder Richman Securities Corporation. . . . To repeat, the payment is not some kind of trap and we did not place any conditions on your acceptance of it in our letter of September 23, 2003, nor do we now.

Letter from David A. Salzman to John Lawrence, December 29, 2003 [Doc. # 5, Ex. C].

It is this letter that is the source of Lawrence's equitable estoppel claim. Lawrence notes that Wilder Richman's counsel "refused, on behalf of the Richman Group entities, to provide any further clarification regarding the January 2004 Check than what had already been provided in writing as aforesaid." Complaint [Doc. # 1] at ¶ 127; Affidavit of John F. Lawrence [Doc. # 6] (verifying complaint).

 Under Connecticut law, any claim of estoppel "is predicated on proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury. . . . It is fundamental that a person who claims an estoppel must show that he has exercised due diligence to know the truth, and that he not only did not know the true state of things but also lacked any reasonably available means of acquiring knowledge." *Chotkowski v. State,* 240 Conn. 246, 268, 690 A.2d 368 (1997) (citations and internal quotation marks omitted); *see also Union Carbide Corp. v. City of Danbury,* 257 Conn. 865, 873, 778 A.2d 204 (2001). While the doctrine of promissory estoppel requires proof of "a clear and definite promise" by a party that reasonably could have been expected to induce reliance, the doctrine of equitable estoppel "involves only represen-

tations and inducements." *See Union Carbide Corp.,* 257 Conn. at 874 n. 2, 778 A.2d 204 (citations and internal quotation marks omitted). However, "silence will not operate as [an] estoppel absent a duty to speak." *Celentano v. Oaks Condominium Ass'n,* 265 Conn. 579, 615, 830 A.2d 164 (2003) (citations and internal quotation marks omitted).

 The December 29, 2003 letter from Wilder Richman cannot form the basis of Lawrence's equitable estoppel claim, because Lawrence has identified no misrepresentations contained in the letter. The letter is plainly on Wilder Richman letterhead, and states that the check in the amount of $498,678.00 was being paid by Wilder Richman, because "we were advised by our securities professionals that the appropriate way to pay all commissions was through Wilder Richman Securities Corporation and not directly from each investment fund or for that matter from any other entity." This is the position Wilder Richman continues to maintain in this litigation. Lawrence had previously identified a series of concerns, including that the payment would not be deemed a payment in full of all sums due him, and that his acceptance of the payment would not constitute an acknowledgment of the accuracy of the framework Wilder Richman used to calculate the amount due him, nor an admission that Wilder Richman is liable to him. The letter does not respond to any of Lawrence's particular concerns, and is silent on the question of whether Wilder Richman would seek to arbitrate any further dispute with Lawrence. While the letter states generally that "the payment is not some kind of trap and we did not place any conditions on your acceptance of it in our letter of September 23, 2003, nor do we now," it would require disregarding the content and context of the remainder of the letter to conclude, as

Lawrence does, that the "no trap" language meant that Wilder Richman would not exercise its right to arbitration under the NASD Rules. Rather, taken together, the letter is not a waiver of Wilder Richman's rights, but merely an acknowledgment that *Lawrence* would not be waiving any of his rights or remedies by accepting the checks.

While the Statement of Claim's request that Lawrence return any portion of the amount Wilder Richman paid him that the arbitrator found it did not owe Lawrence may be viewed as the attachment of a "condition" on Lawrence's acceptance of the funds, counsel represented at oral argument that Wilder Richman would amend its Statement of Claim to remove its request for return of the payment. Accordingly, the Court finds that the December 29, 2003 letter cannot be construed as a misrepresentation intended to induce Lawrence to act to his detriment, and that Lawrence's equitable estoppel claim must fail.[4] This finding is conditioned on Wilder Richman's amendment of its Statement of Claim.

## IV. Conclusion

For the reasons dismissed above, plaintiff's Motion for a Preliminary Injunction

[Doc. # 4] is DENIED. Defendant's Motion to Dismiss [Doc. # 26] is GRANTED, conditioned on defendant's submission of an amended Statement of Claim to the arbitrator.

IT IS SO ORDERED.

4. Lawrence states that an evidentiary hearing is necessary if the Court disagrees with the position he has set forth in his complaint and memorandum in support of his preliminary injunction motion, in order to present the following evidence: "(i) the testimony of Smith and Salzman, (ii) the books and record of WRSC and the particular affiliated entities from which the monies underlying the December 2003 and January 2004 Checks originated, (iii) all Richman Group internal communications, including with counsel, regarding the subject payments, (iv) all documents concerning the legal advice disclosed and put in issue by Salzman in his December 29, 2003 cover letter, (v) the selling agreements which presumably exist between WRSC and the various Richman Group funds, (vi) sworn Richman Group discovery responses, (vii) the private placement memoranda (including any amended or revised memoranda) for the Richman Group funds, and (vii) possibly the testimony of WRSC's counsel." As Lawrence's complaint makes clear, however, Lawrence's equitable estoppel claim is based only on the contents of the December 29, 2003 letter. While the evidence Lawrence seeks to present could be relevant to the issue of Wilder Richman's intent, this Court's conclusion that the claim for equitable estoppel is unwarranted is based not on the subjective intent of the parties but rather, as an objective matter, the lack of any misrepresentation in the December 29, 2003 letter. Accordingly, further development of the factual record is unnecessary.